UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY USSERY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA LLC,<br><br>Defendant. | No. 2:23-cv-00952-DAD-DB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE<br><br>(Doc. No. 27) |

This matter is before the court on the motion to dismiss and/or strike filed by defendant on September 26, 2023. (Doc. No. 27.) On October 12, 2024, the motion was taken under submission on the papers. (Doc. No. 30.) For the reasons explained below, the court will grant defendant's motion to dismiss and deny defendant's motion to strike.

**BACKGROUND**

On May 22, 2023, plaintiffs Alpha Zeta Logistix ("Alpha") and Anthony Ussery (collectively, "plaintiffs") filed this lemon law action against defendant Mercedes-Benz USA LLC, alleging serious defects and nonconformities in the 2022 Mercedes-Benz G63 AMG (the "Subject Vehicle") that plaintiffs leased to purchase. (Doc. No. 1 at ¶¶ 17–18.) On June 13, 2023, defendant filed a motion to dismiss, which the court granted with leave to amend at a

/////

1

1   hearing on August 15, 2023.  (Doc. Nos. 9, 21.)  On August 29, 2023, plaintiffs filed their

2   operative first amended complaint ("FAC").  (Doc. No. 24.)  In their FAC, plaintiffs allege the

3   following.

4     Plaintiff Ussery is an individual residing in Stockton, California.  (*Id.* at ¶ 14.)  He is the

5   president of Alpha Zeta Logistix, a California limited liability company also based in Stockton.

6   (*Id*. at ¶¶ 15–16.)  On August 25, 2022, plaintiffs purchased and took delivery of the Subject

7   Vehicle from an authorized Mercedes-Benz retail facility in Fairfield, California.  (*Id.* at ¶ 22.)

8   Instead of financing the Subject Vehicle's purchase through a traditional lender, plaintiffs leased

9   it with the intent to purchase it through Enterprise Fleet Management.  (*Id.* at ¶ 23.)

10    The Subject Vehicle was delivered to plaintiffs with serious defects and nonconformities

11  and later developed other serious defects and nonconformities, including engine electronics

12  system defects and electrical defects.  (*Id.* at ¶ 26.)  On November 3, 2022, two months after the

13  Subject Vehicle was purchased, plaintiffs presented it at Mercedes Benz of Stockton to diagnose

14  and repair defects causing the check engine light to illuminate, a check battery message to

15  activate, and to replace the windshield.  (*Id.* at ¶ 27.)  The corresponding repair order was closed

16  on November 4, 2022.  (*Id.*)  Plaintiffs believe the diagnoses and repairs were unsuccessful.  (*Id.*)

17    On November 4, 2022, plaintiffs presented the Subject Vehicle at Mercedes Benz of

18  Stockton to diagnose and repair defects causing the wiper blades to independently engage and

19  multiple warning messages to activate.  (*Id.* at ¶ 28.)  The repair order was closed on November

20  28, 2022.  (*Id.*)  Plaintiffs believe the diagnoses and repairs were unsuccessful.  (*Id.*)

21    On January 3, 2023, plaintiffs presented the Subject Vehicle at Mercedes Benz of

22  Stockton to diagnose and repair defects causing the Subject Vehicle's door to become misaligned

23  and close incorrectly.  (*Id.* at ¶ 29.)  The repair order was closed on January 11, 2023.  (*Id.*)

24  Plaintiffs believe the diagnoses and repairs were unsuccessful.  (*Id.*)

25    On January 20, 2023, plaintiffs again presented the Subject Vehicle at Mercedes Benz of

26  Stockton to diagnose and repair defects causing the Subject Vehicle's door to become misaligned

27  and close incorrectly.  (*Id.* at ¶ 30.)  The repair order was closed on January 20, 2023.  (*Id.*)

28  Plaintiffs believe the diagnoses and repairs were unsuccessful.  (*Id.*)  On or about April 4, 2023,

plaintiffs contacted defendant Mercedes-Benz USA, LLC directly and requested that it repurchase or replace the Subject Vehicle.  (*Id.* at ¶ 34.)

Based on the above, plaintiffs assert the following three claims against defendant: (1) breach of express warranty in violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly"), California Civil Code §§ 1790, *et seq.*; (2) breach of implied warranty in violation of Song-Beverly, California Civil Code §§ 1792, *et seq.*; and (3) failure to meet repair requirements in violation of Song-Beverly § 1793.2(b).  (Doc. No. 24 at ¶¶ 41–82.)  Plaintiffs have also attached three exhibits that they refer to in their FAC.  The first is the relevant Retail Installment Sale Contract ("RISC"), which plaintiffs allege reflects that the approximate value of the Subject Vehicle is $256,666.75.  (*Id.* at ¶ 24; Doc. No. 24-1 at 2.)  The second is plaintiff Alpha's statement of information, which plaintiffs allege reflects that plaintiff Alpha is a California citizen.  (Doc. Nos. 24 at ¶ 6; 24-2 at 2.)  The third is defendant's statement of information, which plaintiffs allege reflects that defendant is not a California citizen.  (Doc. Nos. 24 at ¶ 7; 24-3 at 2–3.)

Defendant moved to dismiss plaintiffs' FAC and/or strike portions of plaintiffs' FAC on September 26, 2023 and filed an accompanying request for judicial notice.[1]  (Doc. Nos. 27, 28.)  Plaintiffs filed their opposition to the pending motion on October 11, 2023.  (Doc. No. 29.)  On October 23, 2023, defendant filed its reply thereto.  (Doc. No. 31.)

/////

---

[1] Defendant's unopposed request for judicial notice requests that the court take notice of the following three documents:  (1) Application for Certificate of Authority for a Foreign For-Profit Corporation for Enterprise FM Trust LSR; (2) Statement and Designation by Foreign Association for Enterprise FM Trust LSR; and (3) Department of Transportation Company Snapshot for Alpha Zeta Logistix LLC.  (Doc. No. 28 at 1.)  The court will grant defendant's unopposed request for judicial notice as to the third document, which is properly the subject of judicial notice as a public record obtained from the United States Department of Transportation.  Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  The court will deny defendant's request as to the first two documents as moot because these documents are offered in support of defendant's joinder argument in its pending motion to dismiss which the court declines to address in this order.

# LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

# ANALYSIS

## A.    The Subject Vehicle

In its pending motion to dismiss, defendant argues that all of plaintiffs' claims must be dismissed because the Subject Vehicle was purchased for business or commercial purposes and thus does not constitute a "consumer good" or "new motor vehicle" under the Song-Beverly Act. (Doc. No. 27 at 5–6.)  In order for a plaintiff to prevail under the Song-Beverly Act, particularly on an implied warranty claim, the plaintiff must be a "buyer of consumer goods." Cal. Civ. Code § 1794(a); *see also Ruvalcaba v. Hyundai Motor Am.*, No. 8:22-cv-01244-JWH-JDE, 2024 WL 943946, at *4 (C.D. Cal. Jan. 4, 2024) ("The Song-Beverly Act's implied warranty of merchantability applies to the sale of only 'consumer goods.'").  A "buyer" means "any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail." Cal. Civ. Code § 1791(b).  Consumer goods are defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." *Id.* § 1791(a).

"With respect to *express* warranties the Song-Beverly Act applies, among other things, to 'new motor vehicles.'" *Edmonson v. LCW Auto. Corp.*, No. 07-cv-03303-CAS-VBK, 2008 WL 11338640, at *2 (C.D. Cal. Mar. 10, 2008) (quoting Cal. Civ. Code § 1793.2(d)).  The Song-Beverly Act "originally protected only individual consumers ('buyers') from defective consumer products (including 'new motor vehicles,' which are at issue here)." *David Wolan & Harper & Assocs., LLC v. McLaren Auto., Inc.*, No. 2:23-cv-00331-HDV-SK, 2024 WL 1094719, at *1 (C.D. Cal. Feb. 6, 2024).  The California Legislature later amended the Act to expand the definition of "new motor vehicle" to include both:  (1) a vehicle "bought or used primarily for personal, family, or household purposes;" and (2) a vehicle with a "gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, including a partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state." Cal. Civ. Code § 1793.22(e)(2); *see also Aquair Ventures, LLC v. Gulf Stream Coach, Inc.*, No. 08-cv-02903-SC, 2009 WL 150963, at *4 (N.D. Cal. Jan. 21, 2009) (noting that the state legislature "expanded the Act to

1    cover vehicles purchased for business purposes"). Thus, "courts have held that the law now
2    encompasses within the ambit of 'buyers' certain corporate entities who obtain vehicles for
3    business purposes." *Wolan & Harper & Assocs., LLC*, 2024 WL 1094719, at *1; *see also Park*
4    *City Servs., Inc. v. Ford Motor Co.*, 144 Cal. App. 4th 295, 306 (2006) ("[E]ven though 'buyer' is
5    still defined as an individual purchaser of goods for personal use, it must be deemed to include
6    some corporate purchasers of new motor vehicles for business use."). "Thus, 'new motor vehicle'
7    as defined in the Song-Beverly Act can either be a vehicle purchased primarily for personal use
8    (by an individual) or a vehicle weighing under 10,000 pounds that is used primarily for business
9    purposes (by an individual or corporate entity)." *Wolan & Harper & Assocs., LLC*, 2024 WL
10   1094719, at *1 (citing Cal. Civ. Code § 1793.22(e)(2)).

11   In their FAC, plaintiffs allege that "the Subject Vehicle constitutes 'consumer goods'
12   and/or a 'new motor vehicle' as defined under the Song-Beverly Act." (Doc. No. 24 at ¶ 36.)
13   They also allege that they have used the Subject Vehicle primarily for family or household
14   purposes. (*Id*. at ¶ 44.) Defendant argues that the RISC, which plaintiffs submitted as an exhibit
15   with their FAC, denotes that the primary use for which the Subject Vehicle was purchased is
16   "business or commercial," meaning that the Subject Vehicle could only qualify for protection
17   under the Song-Beverly Act's second definition of a "new motor vehicle." (Doc. No. 24-1 at 2.)
18   Further, defendant's request for judicial notice contains a snapshot from the Department of
19   Transportation suggesting that plaintiff Alpha has five or more vehicles registered in California.
20   (Doc. No. 28-3 at 2.) Based on these documents, defendant argues that the Subject Vehicle
21   cannot constitute a consumer good or a new motor vehicle under the Song-Beverly Act.

22   Plaintiffs provide little direct response to this argument in their opposition. They argue
23   that their FAC "pleads precisely the facts needed to qualify the Subject Vehicle for protection
24   under the Song-Beverly Act." (Doc. No. 29 at 10.) In their FAC plaintiffs make no allegations
25   about a business purpose for the Subject Vehicle and allege that they have used the Subject
26   Vehicle primarily for family or household purposes. (Doc. No. 24 at ¶ 44.) The court accepts
27   this allegation as true and finds that the checkmark on the RISC, which indicates that the Subject
28   Vehicle was bought for a "business or commercial" purpose, is not dispositive because a vehicle

1  can qualify as a "consumer good" and "new motor vehicle" under Song-Beverly if bought *or* used
2  primarily for personal, family, or household purposes. Cal. Civ. Code §§ 1791(a), 1793.22(e)(2).
3  Defendant does not argue that the RISC somehow precludes the Subject Vehicle from having
4  been primarily used for personal purposes.

5  However, upon accepting the allegations of plaintiffs' FAC as true, the court finds that
6  plaintiff Alpha does not state a viable Song-Beverly claim because plaintiffs have specifically
7  represented that the Subject Vehicle was used primarily for personal purposes. *See Wolan &*
8  *Harper & Assocs., LLC*, 2024 WL 1094719, at *2 (finding that "a non-individual plaintiff like
9  Harper & Associates LLC may only assert a Song-Beverly claim for a vehicle that was used
10 primarily for business purposes, a possibility which the [c]omplaint's own allegations squarely
11 preclude"). Accordingly, the court will dismiss plaintiff Alpha's Song-Beverly claims.

12 **B.     Plaintiff Ussery's Standing**

13 Defendant next argues that plaintiffs' Song-Beverly claims must be dismissed because
14 plaintiff Ussery, as a non-buyer, does not have standing to bring them. (Doc. No. 27 at 5–7.)
15 "Any buyer of consumer goods who is damaged by a failure to comply with any obligation under
16 this chapter or under an implied or express warranty or service contract may bring an action for
17 the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).
18 Plaintiffs in their FAC allege that "[p]laintiffs are the 'buyer' of consumer goods under the Act."
19 Defendant argues that such an allegation is conclusory and unsupported. (Doc. Nos. 24 at ¶¶ 37,
20 45; 27 at 6.) Defendant notes that the RISC, which plaintiffs submitted with their FAC, does not
21 list plaintiff Ussery as a buyer, and instead lists Enterprise FM Trust LSR (the leasing company)
22 and plaintiff Alpha as the buyers. (Doc. No. 24-1 at 2.) In their opposition, plaintiffs do not
23 dispute that plaintiff Ussery does not appear as a buyer on the RISC. (Doc. No. 29 at 5.) Instead,
24 plaintiffs argue that plaintiff Ussery still has standing to bring Song-Beverly claims as a *de facto*
25 buyer. (Doc. No. 29 at 5–11.)

26 There is little authority defining *de facto* buyers or outlining what protections, if any,
27 apply to non-buyers under the Song-Beverly Act. However, it has been recognized that the Act is
28 "a remedial measure intended for the protection of consumers and should be given a construction

consistent with that purpose." *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1545 (2014), *as modified on denial of reh'g* (July 16, 2014). Accordingly, some courts have erred on the side of giving the word "buyer" a remedial construction. For example, as plaintiffs note, the court in *Islas v. Ford Motor Co.* found that a spouse who was not listed on the purchase contract of a vehicle but was, among other things, the person actually making the payments on the vehicle, had standing to bring a claim under the Song-Beverly Act as a buyer. No. 18-cv-02221-GW-SPX, 2019 WL 10855294, at *5 (C.D. Cal. July 29, 2019). However, here plaintiffs have made no allegations in their FAC to support plaintiff Ussery's potential status as a *de facto* buyer. Their bare allegation that "plaintiffs are the buyer" accompanied by their own documentation which fails to list plaintiff Ussery as a buyer is insufficient to establish Ussery's standing to bring a Song-Beverly Act claim. *See Wolan & Harper & Assocs., LLC*, 2024 WL 1094719, at *2–3 (dismissing the plaintiffs' complaint where the individual and corporate plaintiffs averred that they were both the buyers but attached to their complaint a lease in which the corporate plaintiff was the sole lessee). Accordingly, the court will grant defendant's motion to dismiss plaintiff Ussery's claims for failure to sufficiently allege that he was a "buyer" as required by the Song-Beverly Act.

**C.    Leave to Amend**

The court will grant defendant's motion to dismiss plaintiffs' FAC in its entirety. The court thus need not, and does not, address defendant's remaining arguments advanced in its pending motion regarding plaintiffs' alleged failure to join an indispensable party and failure to state a claim as to the third cause of action. (Doc. No. 27 at 7–12.)[2]

Finally, leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). A district court should grant leave to amend "unless it determines that the pleading could not

---

[2] The court will also deny defendant's motion to strike the portion of plaintiffs' FAC referring to remedies sought under the third cause of action as moot. (Doc. No. 27 at 13–14; *see also* Doc. No. 24 at ¶¶ 78–82.)

1  possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal.*
2  *Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).
3  　　　　Here, plaintiffs have already received an opportunity to amend their complaint following
4  defendant's first motion to dismiss. (Doc. No. 21.) However, plaintiffs in their opposition seek
5  leave to file a second amended complaint should any of their claims be subject to dismissal.
6  (Doc. No. 29 at 13.) Plaintiffs have included a list of subject areas in which they could plead
7  facts with greater specificity, and they have also attached a declaration containing statements not
8  included in the FAC. (*Id.*; Doc. No. 29-1 at ¶¶ 1–7.) Based on plaintiffs' representation that
9  there may be additional, unalleged facts to support plaintiff Ussery's status as a buyer, the court is
10 not convinced that further amendment would be futile. *See Robertson v. Bruckert*, 568 F. Supp.
11 3d 1044, 1048 (N.D. Cal. 2021) ("Even claims or defenses with a tenuous basis in the record or
12 those fraught with contradictions will survive the futility inquiry.") (internal quotations omitted).
13 Accordingly, the court will grant plaintiffs a final opportunity to amend their complaint.

**CONCLUSION**

15 　　　　For the reasons explained above:
16 　　1. 　Defendant's request for judicial notice (Doc. No. 28) is granted in part and denied
17 　　　　　in part;
18 　　2. 　Defendant's motion to dismiss plaintiffs' first amended complaint (Doc. No. 27) is
19 　　　　　granted, with leave to amend;
20 　　3. 　Defendant's motion to strike (Doc. No. 27) is denied as moot;
21 　　4. 　Plaintiffs shall file their second amended complaint if they continue to wish to
22 　　　　　pursue this action, or alternatively, a notice of their intent not to do so, within
23 　　　　　twenty-one (21) days from the date of entry of this order; and
24 /////
25 /////
26 /////
27 /////
28 /////

9

5. Plaintiffs are warned that their failure to comply with this order may result in dismissal of this action for failure to prosecute.

IT IS SO ORDERED.

Dated: **May 2, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE