1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY USSERY, et al.,                    No.  2:23-cv-00952-DAD-SCR

12            Plaintiffs,

13       v.                                      ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S
14   MERCEDES-BENZ USA LLC,                      MOTION TO DISMISS AND DENYING
                                                 DEFENDANT'S MOTION TO STRIKE
15            Defendant.
                                                 (Doc. No. 41)
16

17

18          This matter is before the court on the motion to dismiss and/or strike filed by defendant on

19   June 20, 2024.  (Doc. No. 41.)  On July 17, 2024, the motion was taken under submission on the

20   papers.  (Doc. No. 45.)  For the reasons explained below, the court will grant defendant's motion

21   to dismiss in part and deny defendant's motion to strike.

22                                      **BACKGROUND**

23          On May 22, 2023, plaintiffs Alpha Zeta Logistix ("Alpha") and Anthony Ussery

24   (collectively, "plaintiffs") filed this lemon law action against defendant Mercedes-Benz USA

25   LLC, alleging serious defects and nonconformities in the 2022 Mercedes-Benz G63 AMG (the

26   "Subject Vehicle") that plaintiffs leased to purchase.  (Doc. No. 1 at ¶¶ 17–18.)  On June 13,

27   2023, defendant filed a motion to dismiss, which the court granted with leave to amend at a

28   hearing on August 15, 2023.  (Doc. Nos. 9, 21.)  On August 29, 2023, plaintiffs filed their first

                                              1

amended complaint ("FAC").  (Doc. No. 24.)  On September 26, 2023, defendant filed a motion to dismiss plaintiffs' FAC, which the court granted on May 2, 2024, but permitted plaintiffs another opportunity to amend their allegations.  (Doc. Nos. 27, 34.)  On May 23, 2024, plaintiffs filed their operative second amended complaint ("SAC").  (Doc. No. 38.)  In their SAC, plaintiffs allege the following.

Plaintiff Ussery resides in Stockton, California.  (*Id.* at ¶ 14.)  He is the president of plaintiff Alpha Zeta Logistix, a California limited liability company also based in Stockton.  (*Id.* at ¶¶ 15–16.)  On August 25, 2022, plaintiffs purchased and took delivery of the Subject Vehicle from an authorized Mercedes-Benz retail facility in Fairfield, California.  (*Id.* at ¶ 22.)  Plaintiff Alpha purchased the Subject Vehicle and financed it through a lease with Enterprise Fleet Management.[1]  (*Id.* at ¶ 26.)

The Subject Vehicle was delivered to plaintiffs with serious defects and nonconformities and later developed other serious defects and nonconformities, including engine electronics system defects and electrical defects.  (*Id.* at ¶ 32.)  On November 3, 2022, two months after the Subject Vehicle was purchased, plaintiffs presented it at Mercedes Benz of Stockton to diagnose and repair defects causing the check engine light to illuminate, a check battery message to activate, and to replace the windshield.  (*Id*. at ¶ 33.)  The corresponding repair order was closed on November 4, 2022.  (*Id*.)  Plaintiffs believe the diagnoses and repairs were unsuccessful.  (*Id*.)

On November 4, 2022, plaintiffs presented the Subject Vehicle at Mercedes Benz of Stockton to diagnose and repair defects causing the wiper blades to independently engage and multiple warning messages to activate.  (*Id.* at ¶ 34.)  The repair order was closed on November 28, 2022.  (*Id.*)  Plaintiffs believe these diagnoses and repairs were also unsuccessful.  (*Id.*)

---

[1]  While there are no specific allegations to this effect in plaintiffs' SAC, the court observes that documents attached as exhibits to the SAC and to defendant's pending motion suggest that Enterprise FM Trust is the entity that facilitates car leasing and is the lessor of the Subject Vehicle.  (*See* Doc. No. 38-4 at 2 ("Enterprise FM Trust (not Enterprise Fleet Management) will be the Lessor of such vehicle . . . ."); *see also* Doc. No. 42-1 at 6 ("You recently requested the Division of Finance review the proposed corporate name 'Enterprise FM Trust.'  This is a Delaware business trust that is proposed to facilitate the car leasing business of Enterprise Rent-a-car in Missouri."))  The court will hereinafter refer to Enterprise FM Trust as "Enterprise."

1        On January 3, 2023, plaintiffs presented the Subject Vehicle at Mercedes Benz of

2 Stockton to diagnose and repair defects causing the Subject Vehicle's door to become misaligned

3 and close incorrectly.  (*Id.* at ¶ 35.)  The repair order was closed on January 11, 2023.  (*Id.*)

4 Plaintiffs believe these diagnoses and repairs were unsuccessful.  (*Id.*)

5        On January 20, 2023, plaintiffs again presented the Subject Vehicle at Mercedes Benz of

6 Stockton to diagnose and repair defects causing the Subject Vehicle's door to become misaligned

7 and close incorrectly.  (*Id.* at ¶ 36.)  The repair order was closed on January 20, 2023.  (*Id.*)  Once

8 again, plaintiffs believe the diagnoses and repairs were unsuccessful.  (*Id.*)  On or about April 4,

9 2023, plaintiffs contacted defendant Mercedes-Benz USA, LLC directly and requested that it

10 repurchase or replace the Subject Vehicle.  (*Id.* at ¶ 40.)

11        Based on the above, plaintiffs assert the following three claims against defendant:

12 (1) breach of express warranty in violation of the Song-Beverly Consumer Warranty Act ("Song-

13 Beverly"), California Civil Code §§ 1790, *et seq.*; (2) breach of implied warranty in violation of

14 Song-Beverly, California Civil Code §§ 1792, *et seq.*; and (3) failure to meet repair requirements

15 in violation of Song-Beverly § 1793.2(b).  (Doc. No. 38 at ¶¶ 47–89.)  Plaintiffs have also

16 attached to their SAC four exhibits that they refer to therein.  The first is the relevant Retail

17 Installment Sale Contract ("RISC"), which plaintiffs allege reflects that the approximate value of

18 the Subject Vehicle is $256,666.75.  (*Id*. at ¶ 3; Doc. No. 38-1 at 2.)  The second is plaintiff

19 Alpha's statement of information, which plaintiffs allege reflects that plaintiff Alpha is a

20 California citizen.  (Doc. Nos. 38 at ¶ 6; 38-2 at 2.)  The third is defendant's statement of

21 information, which plaintiffs allege reflects that defendant is not a California citizen.  (Doc. Nos.

22 38 at ¶ 7; 38-3 at 2–3.)  The fourth is what plaintiffs allege to be the lease agreement between

23 both plaintiffs and Enterprise.  (Doc. Nos. 38 at ¶ 26; 38-4 at 2.)

24 /////

25 /////

26 /////

27 /////

28 /////

1    Defendant moved to dismiss plaintiffs' SAC and/or strike portions of plaintiffs' SAC on

2    June 20, 2024 and filed an accompanying request for judicial notice.[2]  (Doc. Nos. 41, 42.)

3    Plaintiffs filed their opposition to that motion on July 3, 2024.  (Doc. No. 43.)  On July 12, 2024,

4    defendant filed its reply thereto.  (Doc. No. 44.)

5                                      **LEGAL STANDARD**

6    **A.      Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)**

7             The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

8    sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

9    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

10   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

11   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

12   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

13   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

14   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

15   Iqbal*, 556 U.S. 662, 678 (2009).

16            In determining whether a complaint states a claim on which relief may be granted, the

17   court accepts as true the allegations in the complaint and construes the allegations in the light

18   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

19   the court need not assume the truth of legal conclusions cast in the form of factual allegations.

20   *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

21

22   [2]  Defendant's unopposed request for judicial notice asks that the court take notice of the
     following three documents:  (1) Application for Certificate of Authority for a Foreign For-Profit
23   Corporation for Enterprise FM Trust LSR; (2) Statement and Designation by Foreign Association
     for Enterprise FM Trust LSR; and (3) Department of Transportation ("DOT") Company Snapshot
24   for Alpha Zeta Logistix LLC.  (Doc. No. 42 at 1.)  The court will grant defendant's unopposed
     request for judicial notice as to all three documents, which are properly the subject of judicial
25   notice as public records obtained from the United States DOT and the Secretaries of State of the
     states of California and Missouri.  Public records are properly the subject of judicial notice
26   because the contents of such documents contain facts that are not subject to reasonable dispute,
     and the facts therein "can be accurately and readily determined from sources whose accuracy
27   cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Intri-Plex Techs. v. Crest Grp.,
     Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

28

                                              4

1    require detailed factual allegations, "it demands more than an unadorned, the-defendant-

2    unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

3    mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

4    *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

5    of a cause of action, supported by mere conclusory statements, do not suffice.").  It is

6    inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

7    defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

8    *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Further,

9    though a court must generally accept allegations in a complaint as true at the motion to dismiss

10   stage, the court need not accept as true inconsistent allegations in a complaint.  *See Jones v.*

11   *Pollard*, No. 21-cv-00162-MMA-RBM, 2022 WL 706926, at *5 (S.D. Cal. Mar. 9, 2022) (citing

12   *Walsh v. Sacramento*, No. 2:13-cv-02077-MCE-KJN, 2014 WL 4472752, at *10 (E.D. Cal. Sep.

13   11, 2014)); *see also In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 (S.D.N.Y.

14   2021) ("[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither

15   obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding

16   a motion to dismiss.") (citation omitted).

17          In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider

18   material that is properly submitted as part of the complaint, documents that are not physically

19   attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

20   necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d.

21   668, 688–89 (9th Cir. 2001).

22   **B.     Motion to Dismiss for Failure to Join a Party Pursuant to Rule 12(b)(7)**

23          A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(7) for

24   "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  Federal Rule of Civil Procedure

25   19, which governs the circumstances under which persons must be joined as parties to a lawsuit,

26   provides in relevant part:

27   /////

28   /////

5

1

2

3

(a) Persons Required to Be Joined if Feasible.

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

4

5

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

6

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

7

8

(i) as a practical matter impair or impede the person's ability to protect the interest; or

9

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

10

11

Fed. R. Civ. P. 19(a)(1).  If it is not feasible for the court to join a person meeting the

12

requirements of Rule 19(a), then pursuant to Rule 19(b), the court "must determine whether, in

13

equity and good conscience, the action should proceed among the existing parties or should be

14

dismissed."  Fed. R. Civ. P. 19(b).

15

Thus, when applying Rule 19, "there are three successive inquiries."  *Equal Emp.*

16

*Opportunity Comm. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  First, the court

17

must determine whether an absent party is "necessary" to the action.  *See Makah Indian Tribe v.*

18

*Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  "If an absentee is a necessary party under Rule 19(a),

19

the second stage is for the court to determine whether it is feasible to order that the absentee be

20

joined."  *Peabody W. Coal. Co.*, 400 F.3d at 779.  Finally, if joinder of the absentee is not

21

feasible, "the court must determine whether the case can proceed without the absentee, or whether

22

the absentee is an 'indispensable party' such that the action must be dismissed."  *Id.*  "The inquiry

23

is a practical one and fact specific, and is designed to avoid the harsh results of rigid application."

24

*Makah Indian Tribe*, 910 F.2d at 558 (9th Cir. 1990) (internal citations and quotations omitted).

25

"The moving party has the burden of persuasion in arguing for dismissal."  *Id.*  In considering

26

such a motion under Rule 12(b)(7), the court may consider evidence outside of the pleadings.  *See*

27

*McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

28

/////

6

**ANALYSIS**

**A.      The Subject Vehicle**

In its pending motion to dismiss, defendant renews its argument that all of plaintiffs' claims must be dismissed because the Subject Vehicle was purchased for business or commercial purposes and thus does not constitute a "consumer good" or "new motor vehicle" under the Song-Beverly Act.  (Doc. No. 41 at 5–6.)  Again, in order for a plaintiff to prevail under the Song-Beverly Act, particularly on an implied warranty claim, the plaintiff must be a "buyer of consumer goods."  Cal. Civ. Code § 1794(a); *see also Ruvalcaba v. Hyundai Motor Am.*, No. 8:22-cv-01244-JWH-JDE, 2024 WL 943946, at *4 (C.D. Cal. Jan. 4, 2024) ("The Song-Beverly Act's implied warranty of merchantability applies to the sale of only 'consumer goods.'").  A "buyer" means "any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail."  Cal. Civ. Code § 1791(b). Consumer goods are defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables."  *Id.* § 1791(a).

"With respect to *express* warranties the Song-Beverly Act applies, among other things, to 'new motor vehicles.'"  *Edmonson v. LCW Auto. Corp.*, No. 07-cv-03303-CAS-VBK, 2008 WL 11338640, at *2 (C.D. Cal. Mar. 10, 2008) (quoting Cal. Civ. Code § 1793.2(d)).  The Song-Beverly Act "originally protected only individual consumers ('buyers') from defective consumer products (including 'new motor vehicles,' which are at issue here)."  *David Wolan & Harper & Assocs., LLC v. McLaren Auto., Inc.*, No. 2:23-cv-00331-HDV-SK, 2024 WL 1094719, at *1 (C.D. Cal. Feb. 6, 2024).  The California Legislature later amended the Act to expand the definition of "new motor vehicle" to include both:  (1) a vehicle "bought or used primarily for personal, family, or household purposes;" and (2) a vehicle with a "gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, including a partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state."  Cal. Civ. Code § 1793.22(e)(2); *see also Aquair Ventures, LLC v. Gulf Stream Coach, Inc.*, No. 08-cv-02903-SC, 2009 WL

7

150963, at *4 (N.D. Cal. Jan. 21, 2009) (noting that the California legislature "expanded the Act to cover vehicles purchased for business purposes").  Thus, "courts have held that the law now encompasses within the ambit of 'buyers' certain corporate entities who obtain vehicles for business purposes."  *Wolan & Harper & Assocs., LLC*, 2024 WL 1094719, at *1; *see also Park City Servs., Inc. v. Ford Motor Co*., 144 Cal. App. 4th 295, 306 (2006) ("[E]ven though 'buyer' is still defined as an individual purchaser of goods for personal use, it must be deemed to include some corporate purchasers of new motor vehicles for business use.").

In their SAC, plaintiffs allege that plaintiff Alpha "purchased and leased the Subject Vehicle for primarily business purposes" and that "Plaintiff Anthony Ussery was the Subject Vehicle's primary driver and primarily used the vehicle for household, family, and personal purposes including commuting to/from work."  (Doc. No. 38 at ¶¶ 23, 25.)  Defendant argues that these allegations are contradictory and that the RISC, which plaintiffs submitted as an exhibit with their SAC, denotes that the primary use for which the Subject Vehicle was purchased is "business or commercial," meaning that the Subject Vehicle could only qualify for protection under the Song-Beverly Act's second definition of a "new motor vehicle."  (Doc. No. 38-1 at 2.)  Further, defendant's request for judicial notice contains a snapshot from the DOT, which defendant argues suggests that plaintiff Alpha has five or more vehicles registered in California.  (Doc. Nos. 41 at 6; 42-3 at 2.)  Based on these documents, defendant argues that the Subject Vehicle cannot constitute a consumer good or a new motor vehicle covered under the Song-Beverly Act.  (Doc. No. 41 at 5–8.)

In opposition, plaintiffs appear to argue that they have sufficiently alleged that the Subject Vehicle is a consumer good under both definitions of a new motor vehicle.  (Doc. No. 43 at 12.)  They argue that their allegations satisfy the first definition of a new motor vehicle, which is a vehicle "bought or used primarily for personal, family, or household purposes," through their allegations that plaintiff Ussery was the vehicle's primary driver and primarily used it for household, family, and personal purposes.  (*Id.*)  They also suggest that they have satisfied the second definition of a new motor vehicle, which requires that a vehicle be "bought or used primarily for business purposes," by alleging that the Subject Vehicle was purchased for business

8

purposes.  (*Id.*)  They further argue that defendant is misrepresenting the snapshot from the DOT, and that plaintiffs correctly allege in their SAC that plaintiff Alpha did not have more than five motor vehicles registered in its name at all relevant times.  (*Id*. at 14.)  They note that plaintiff Ussery testified at his deposition that where the DOT snapshot refers to plaintiff Alpha having "20 power units," this includes registered vehicles, rented vehicles, and trailers — not simply registered vehicles.  (*Id*.)

The court finds that plaintiffs' allegations that the Subject Vehicle was purchased for business purposes but used primarily for personal purposes are not technically contradictory. While arguably unusual, it is plausible that plaintiffs could have initially purchased the Subject Vehicle intending it for business purposes, but then later used it for primarily personal purposes. Thus the court must accept these allegations as true.  Further, the court accepts plaintiffs' allegation that plaintiff Alpha did not have more than five motor vehicles registered to its name as true, and will not wade into interpreting the DOT snapshot or assigning weight to plaintiff Ussery's deposition testimony at this early stage of the litigation.  Accordingly, the court finds that the Subject Vehicle may qualify as a "new motor vehicle" under either definition provided in the Song-Beverly Act and will deny defendant's motion to dismiss all of plaintiffs' claims on the ground that the Subject Vehicle is not a consumer good.

**B.     Plaintiff Ussery's Standing**

Defendant next renews its argument that plaintiff Ussery does not have standing to assert Song-Beverly claims as a non-buyer who is not named on the RISC.  (Doc. No. 41 at 6–7.)  In opposition, plaintiffs argue that plaintiff Ussery has standing as a *de facto* buyer, and that plaintiffs' allegations that plaintiff Ussery was the Subject Vehicle's primary driver, made payments on the lease, and paid for the maintenance of and insurance on the Subject Vehicle support his status as a *de facto* buyer.  (Doc. No. 43 at 14–16.)

"Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief."  Cal. Civ. Code § 1794(a).  As noted in the court's prior order addressing defendant's earlier motion to dismiss,

1   there is little authority defining *de facto* buyers or outlining what protections, if any, apply to non-

2   buyers under the Song-Beverly Act.  However, it has been recognized that the Act is "a remedial

3   measure intended for the protection of consumers and should be given a construction consistent

4   with that purpose."  *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1545 (2014), *as*

5   *modified on denial of reh'g* (July 16, 2014).  Accordingly, courts may err on the side of giving the

6   word "buyer" a remedial construction.  For example, as plaintiffs note, one California district

7   court has concluded that a sibling who was not listed on the purchase contract of a vehicle but

8   was the person who actually made the payments on the vehicle, who obtained and made insurance

9   payments, and who was the vehicle's primary driver, had standing to bring a claim under the

10   Song-Beverly Act as a buyer.  *Islas v. Ford Motor Co.,* No. 18-cv-02221-GW-SP, 2019 WL

11   10855294, at *5 (C.D. Cal. July 29, 2019).  In response, defendant points to another California

12   district court decision where the court found that a former spouse who was not listed on the

13   vehicle's purchase contract, but who sometimes drove the vehicle for personal use and ultimately

14   received the vehicle in a marital settlement, did not have standing as a buyer to bring a Song-

15   Beverly claim.  *Boyd v. Jaguar Land Rover N. Am., LLC,* No. 11-cv-01580-JLS-WMC, 2012 WL

16   12868253, at *1–3 (S.D. Cal. Sept. 20, 2012).  The court finds that the facts of the present case as

17   alleged in the SAC more closely mirror those in *Islas* rather than those in *Boyd.*  In particular, the

18   undersigned notes that the district court in *Boyd* was "unable to identify the course of the funds

19   that paid for the vehicle," whereas in the present case, plaintiff Ussery has alleged that he made

20   payments on the Subject Vehicle's lease.  *Id*. at *2 n.3.

21       The parties have not directed the court to any additional authority discussing *de facto*

22   buyer status for similarly situated plaintiffs, and the court has not been able to locate any.

23   Accordingly, the court returns to the premise that Song-Beverly "is a remedial measure intended

24   for the protection of consumers and should be given a construction consistent with that purpose."

25   *Brand*, 226 Cal. App. 4th at 1545.  The undersigned agrees with the observation of the court in

26   *Islas* that if the California legislature wishes to exclude Song-Beverly coverage for someone like

27   plaintiff Ussery, whose name does not appear on a sales contract but who alleges facts supporting

28   his status as a *de facto* buyer, they could clarify the definition of "buyer" in the statute by

1    providing more specificity. *See Islas*, 2019 WL 10855294, at \*5. Until then, the definition of

2    "buyer" must be construed consistent with the statute's remedial purpose, and therefore the court

3    finds that plaintiff Ussery has alleged sufficient facts in his SAC to demonstrate his standing.

4    **C.      Failure to Join**

5            Next, defendant argues that plaintiffs' SAC should be dismissed due to their failure to join

6    Enterprise as a necessary and indispensable party to this action. (Doc. No. 41 at 10.) Defendant

7    argues that Enterprise, as a signatory to the RISC, is a necessary party who cannot be joined

8    because its joinder would destroy this court's diversity jurisdiction. (*Id*. at 10–11.) Defendant

9    also argues that Enterprise is an indispensable party because in its absence defendant is

10   susceptible to inconsistent obligations or a collateral attack. (*Id*. at 10.) In opposition, plaintiffs

11   argue that Enterprise is neither a necessary nor an indispensable party because their SAC alleges

12   that Enterprise merely financed the vehicle purchase and, aside from that, has no interest in the

13   Subject Vehicle. (Doc. No. 43 at 18.) They also note that despite Enterprise being listed on the

14   RISC, Enterprise did not actually execute the RISC. (*Id.*)

15           Under Rule 19(a)(1), a party may be deemed "required" (i.e. "necessary") under one of

16   three circumstances. First, a party may be "required" if "in that party's absence, the court cannot

17   accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *Makah Indian Tribe*,

18   910 F.2d at 558 ("First, the court must decide if complete relief is possible among those already

19   parties to the suit."). Alternatively, an absent party may be necessary if that party "has a legally

20   protected interest in the suit." *Makah Indian Tribe*, 910 F.2d at 558. The interest must be "more

21   than a financial stake" and there must be "more than speculation about a future event." *Id*. If a

22   legally protected interest exists, the court must further determine whether "disposing of the action

23   in the person's absence may: (i) as a practical matter impair or impede the person's ability to

24   protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double,

25   multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P.

26   19(a)(1)(B). "The burden of proof is on the moving party to show one of the circumstances in

27   Rule 19 exists." *Kohler v. Greystar Real Est. Partners, LLC*, No. 15-cv-02195-JAH-KSC, 2017

28   WL 5973338, at \*2 (S.D. Cal. Dec. 1, 2017).

Defendant first argues that Enterprise is a necessary party because "[i]n the absence of naming [Enterprise] as a party to this litigation complete relief cannot be accorded among the parties, since, half of the parties to the sales contract are not named."  (Doc. No. 41 at 10.)  However, the complete relief contemplated under Rule 19(a)(1) "refers to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought."  *Eldredge v. Carpenters*, 662 F.2d 534, 537 (9th Cir. 1981); *see also Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251 (9th Cir. 1983) ("The district court can [] provide complete relief to the parties to this action without joining other parties who might also claim an interest in the same land.").  Here, defendant has provided no explanation as to how plaintiffs could not obtain complete relief from defendant Mercedes-Benz USA LLC, such as damages and/or restitution in the form of repurchase of the Subject Vehicle, without Enterprise's presence in this action.

Defendant next argues that Enterprise is a necessary party under Rule 19(a)(1)(B)(ii) because "it is indisputable that [Enterprise] claims an interest relating to the instant action as a co-buyer of the Subject Vehicle" and "not having [Enterprise] in the litigation makes [defendant] susceptible to inconsistent obligations, or a collateral attack, and would not result in a complete determination of the controversy."  (Doc. No. 41 at 10.)  For example, defendant notes that Enterprise would not be "precluded from bringing an action against [defendant] arising from the same purchase and Subject Vehicle" and defendant would have to "perform double or inconsistent obligations by potentially having to offer another repurchase for the same vehicle."  (*Id*.)  In opposition, plaintiffs argue that Enterprise "only financed the purchase of the vehicle and, aside from financing plaintiffs' purchase, has no interest in the Subject Vehicle."  (Doc. No. 43 at 18.)

As noted previously, defendant bears the burden of demonstrating, not merely speculating, that it would be subject to a substantial risk of incurring double or inconsistent obligations if the present action were resolved without Enterprise as a party.  Here, defendant only points to the RISC, which lists Enterprise as a co-buyer of the Subject Vehicle but is not signed by Enterprise, as evidence that Enterprise may also "have the ability to file a lemon law claim against

12

1  [defendant] arising from the purchase of the same vehicle."  (Doc. No. 41 at 10.)  Defendant has

2  not directed the court to any pending cases or other evidence (such as documentation supporting

3  Enterprise's ownership of the Subject Vehicle or communications with Enterprise regarding

4  potential litigation) suggesting that defendant is at any actual risk of facing inconsistent

5  obligations in different courts.  This court thus finds that defendant has only presented a

6  "speculative threat of future litigation, liability, or inconsistent court obligations" that "is

7  insufficient to satisfy [the] burden under Rule 19."  *Yu v. Parmley*, No. 2:21-cv-01568-ART-DJA,

8  2023 WL 10676031, at *2 (D. Nev. Feb. 14, 2023) (noting that the defendant did not "point[] to

9  any other pending cases nor any risk of inconsistent obligations in different courts" and observing

10 that, because the plaintiff sought monetary relief, there was "virtually no risk of inconsistent

11 court-imposed obligations").

12          Accordingly, the court finds that defendant has not carried its burden to demonstrate that

13 Enterprise is a necessary party under Rule 19(a) and thus will not reach the successive inquiries

14 of whether Enterprise can feasibly be joined, and if not, whether Enterprise is an indispensable

15 party.

16 **D.      Failure to State a Claim**

17          Defendant next argues that plaintiffs fail to state a claim as to their third cause of action,

18 defendant's alleged failure to meet repair requirements in violation of Song-Beverly § 1793.2(b).

19 (Doc. No. 41 at 12.)  According to defendant, § 1793.2(b) concerns single repairs lasting more

20 than thirty days and, accordingly, in order to state a claim, "a plaintiff must plead that a single

21 repair attempt took the defendant more than 30 days to complete."  (*Id*.)  Defendant argues that

22 while plaintiffs vaguely assert that the Subject Vehicle "was not conformed to warranty within 30

23 days," they "fail to allege that any individual repair attempt was not completed within thirty

24 days," and instead the allegations of the SAC demonstrate that "all repairs were completed in less

25 than 30 days."  (*Id*. at 13.)  In opposition, plaintiffs argue that their allegations that the Subject

26 Vehicle "has not yet been conformed to warranty" and was presented for repair on various dates

27 in November 2022 and January 2023 are sufficient to state a claim for relief "because it is

28 plausible that the vehicle's repairs were not completed in a reasonable time."  (Doc. No. 43 at 20.)

1    Section 1793.2(b) states that applicable consumer goods "shall be serviced or repaired so

2    as to conform to the applicable warranties within 30 days."  Cal. Civ. Code § 1793.2(b).  In a

3    non-binding, unpublished decision, the Ninth Circuit has interpreted this statute as requiring that a

4    defendant "complete any *single* repair attempt within 30 days."  *Schick v. BMW of N. Am., LLC*,

5    801 F. App'x 519, 521 (9th Cir. 2020)[3] (granting summary judgment in favor of the defendant

6    where the plaintiffs claimed that the vehicle "did not work for a *total* of more than 30 days" but

7    "BMW never took longer than 30 days to complete any single repair attempt").  In *Schick,* the

8    Ninth Circuit noted that, while § 1793.2(b) does not explicitly refer to individual repair attempts,

9    "under any reasonable reading of the statute, § 1793.2(b) requires only that [the defendant]

10   complete any single repair attempt within 30 days."  *Schick*, 801 F. App'x at 521.  While the

11   opinion in *Schick* does not elaborate on this holding, it would appear that the court reached this

12   interpretation in part because § 1793.2(b) is aimed at ensuring that a repair is "commenced within

13   a reasonable time," and also because subsection (b) works in tandem with the reimbursement

14   provision in subsection (d) which does explicitly refer to repair attempts.  *See* Cal. Civ. Code

15   § 1793.2(b), (d).

16   Several district courts have since applied the interpretation of the statute adopted in *Schick*

17   at the pleading stage and dismissed complaints where plaintiffs have not alleged that any

18   individual repair period exceeded thirty days.  *See Binafard v. Mercedes-Benz USA, LLC*, No.

19   2:22-cv-07951-AB-PVC, 2023 WL 2559203, at *1–2 (C.D. Cal. Jan. 4, 2023) (dismissing the

20   plaintiff's claim where he alleged that the "longest consecutive repair period was up to twenty-

21   seven days, and the total number of repair days add[ed] up to approximately 65 days" and that

22   "none of the attempts to repair the car" were successful); *Hashmi v. Mercedes-Benz USA, LLC*,

23   No. 2:21-cv-07291-AC-AFM, 2021 WL 8317124, at * (C.D. Cal. Dec. 28, 2021) (dismissing a

24   complaint where the plaintiff did not allege that a "single repair attempt for his vehicle took

25   defendant more than 30 days to complete"); *Jaimi Glover v. Mercedes-Benz USA, LLC*, No. 8:21-

26   cv-01969-JDE, 2022 WL 2103001, at *4 (C.D. Cal. Jan. 28, 2022) (granting dismissal of the

27   _____

28   [3]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

plaintiff's claim without leave to amend where the plaintiff did not allege "that any single repair attempt for the vehicle lasted more than 30 days" and the plaintiff's allegations instead indicated that "the repair visits lasted between one to seven days"); *Haydeh Toobian v. Mercedes-Benz USA, LLC*, No. 2:22-cv-07068-AB-AGR, 2022 WL 18276975, at *1 (C.D. Cal. Dec. 6, 2022) (finding that the plaintiff's claim failed as a matter of law where the complaint alleged that three repair attempts "took 18, 2, and 11 days, respectively"). The undersigned will follow this course, concluding that plaintiffs are required to allege that the defendant failed to complete a single repair attempt within thirty days.[4] *See Wiles v. Ford Motor Co.*, No. 2:23-cv-00485-SPG-SHK, 2024 WL 3305866, at *5 (C.D. Cal. Mar. 11, 2024) ("Consistent with the reasoning of these district courts and the holding of *Schick*, this Court similarly requires a plaintiff to plead that the defendant failed to complete a single repair attempt within 30 days."); *Arriola v. Ford Motor Co.*, No. 2:22-cv-04602-SPG-JEM, 2022 WL 20611223, at *2 (C.D. Cal. Dec. 15, 2022) ("To state a claim under section 1793.2(b) of the Song-Beverly Act, a plaintiff must plead that a single repair attempt took a defendant more than 30 days to complete.").

The court observes that here, plaintiffs allege that the Subject Vehicle was presented for repairs four times, and that the four repair attempts took two days, twenty-five days, nine days, and one day, respectively. (Doc. No. 38 at ¶¶ 33–36.) These allegations are insufficient to state a cognizable claim under § 1793.2(b), as they do not support a claim that defendant ever took longer than 30 days to complete any single repair attempt. Further, the court finds that plaintiffs' allegation that the Subject Vehicle has still not been conformed to warranty is also insufficient, since plaintiffs have not alleged that they presented the Subject Vehicle for repairs again after their fourth repair order was closed on January 20, 2023. Accordingly, this claim must be dismissed.

/////

---

[4] The undersigned has identified one decision in which a district court declined to follow the interpretation of the statute adopted in *Schick* based on the non-binding nature of that opinion. *See Guzzetta v. Ford Motor Co.*, No. 2:21-cv-09151-MEMF-PVC, 2023 WL 5207429, at *6 n.4 (C.D. Cal. July 3, 2023) (finding that the plaintiffs properly pleaded a violation of § 1793.2(b) despite their allegations that "the five repair attempts took one day, two days, two days again, three days, and seven days, respectively").

1    **E.      Motion to Strike**

2              Finally, defendant argues that the court should strike ¶¶ 85 through 89 of plaintiffs' SAC

3    wherein they state the remedies that they seek as to their third claim.  (Doc. No. 41 at 14.)

4    Defendant argues that these paragraphs should be stricken because "before those remedies [of

5    restitution, replacement, or civil penalties] are available, the manufacturer is entitled to a

6    reasonable number of repair opportunities."  (*Id*. at 15.)  Defendant also appears to argue that

7    because plaintiffs have not "prove[d] that defendant's failure to repurchase or replace" the

8    Subject Vehicle "was willful," plaintiffs are not entitled to civil penalties.  (*Id*. at 14.)  In

9    opposition, plaintiffs state that these arguments are "premature" and aver that their allegations are

10   sufficient at the pleading stage.  (Doc. No. 43 at 22–23.)

11             What constitutes a reasonable number of repair attempts is "a question of fact to be

12   determined in light of the circumstances," though a defendant must be given "more than one

13   opportunity to fix the nonconformity."  *Robertson v. Fleetwood Travel Trailers of Cal., Inc*., 144

14   Cal. App. 4th 785, 799 (2006).  In their SAC, plaintiffs allege that they presented the Subject

15   Vehicle for repairs four times.  Accordingly, it cannot be determined as a matter of law that a

16   reasonable number of attempts did not take place here.  *See Hernandez v. Mercedes-Benz USA,*

17   *LLC*, No. 3:22-cv-00824-BEN-RBB, 2023 WL 2593935, at *4 (S.D. Cal. Mar. 20, 2023) (finding

18   that where the defendant "allegedly made multiple attempts to repair the Subject Vehicle" it could

19   not "be determined as a matter of law whether a reasonable number of attempts took place").

20   "Nor can it be said, at this stage, that plaintiff[s'] allegations cannot support an inference of

21   willfulness as a matter of law."  *Id*.  Accordingly, defendant's motion to strike will be denied.

22   **F.      Leave to Amend**

23             As noted in the court's prior order, leave to amend should be granted "freely" when

24   justice so requires.  (Doc. No. 35 at 8) (citing Fed. R. Civ. P. 15(a)).  The Ninth Circuit maintains

25   a policy of "extreme liberality generally in favoring amendments to pleadings."  *Rosenberg Bros.*

26   *& Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).  A district court should grant leave to amend

27   "unless it determines that the pleading could not possibly be cured by the allegation of other

28   /////

1  facts." Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs., 911 F.2d 242, 247 (9th Cir.

2  1990).

3      In their opposition, plaintiffs state that they request leave to amend should the court grant

4  any portion of the pending motion to dismiss. (Doc. No. 43 at 7.) Plaintiffs have already been

5  granted two opportunities to amend, following both motions to dismiss that this court has

6  previously granted. In fact, in the court's prior order, the undersigned stated that it would "grant

7  plaintiffs a final opportunity to amend their complaint," suggesting that to the extent that the court

8  will grant defendant's pending motion in this order, leave to amend should be denied. (Doc. No.

9  35 at 9.)

10     However, plaintiffs also state in their opposition to the pending motion, despite never

11  having so alleged in any complaint, that they presented the Subject Vehicle to its authorized

12  repair facility a fifth time on February 3, 2023, and that the repair order was closed on March 15,

13  2023. (Doc. No. 43 at 21.) Plaintiffs attach to their opposition a purported copy of the service

14  records denoting that a repair took place between these dates. (Doc. No. 43-3 at 4–18.) The court

15  observes that had plaintiffs alleged that they presented the Subject Vehicle for repair on February

16  3, 2023, and the repair order was closed forty days later on March 15, 2023, they almost certainly

17  would have been found to have sufficiently stated a claim for a violation of § 1793.2(b) given that

18  this alleged repair attempt exceeded thirty days.

19     The court fails to understand why plaintiffs have chosen to omit this allegation from their

20  original complaint, their FAC, and their SAC, particularly since defendant has raised its challenge

21  regarding the sufficiency of plaintiffs' allegations as to their claim under § 1793.2(b) in both of its

22  prior motions to dismiss. (See Doc. Nos. 9, 27.) However, in light of the Ninth Circuit's policy

23  of extreme liberality regarding amendment and the purported copy of the service records attached

24  by plaintiffs to their opposition, the court will grant plaintiffs a final opportunity to amend their

25  allegations as to their third cause of action, only to the extent that they wish to remedy their

26  failure to include any allegation regarding a February 3, 2023 presentation of the Subject Vehicle

27  for repairs.

28  /////

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons explained above:

1.      Defendant's request for judicial notice (Doc. No. 42) is granted;

2.      Defendant's motion to dismiss plaintiffs' second amended complaint (Doc. No. 41) is granted in part and denied in part, with leave to amend also being granted as specified in this order;

3.      Defendant's motion to strike (Doc. No. 41) is denied; and

4.      Plaintiffs shall file their third amended complaint, or alternatively, a notice of their intent not to do so, within twenty-one (21) days from the date of entry of this order.

IT IS SO ORDERED.

Dated:   __**November 22, 2024**__                    _Dale A. Drozd_

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

18