1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   ANTHONY USSERY, et al.,              No.  2:23-cv-00952-DAD-SCR
12              Plaintiffs,
13        v.                              ORDER GRANTING IN PART PLAINTIFFS'
                                          MOTION FOR ATTORNEYS' FEES AND
14   MERCEDES-BENZ USA LLC,               MOTION FOR COSTS AND EXPENSES
15              Defendant.                (Doc. No. 69)
16
17

18        This matter is before the court on the motion for attorneys' fees, costs, and expenses filed

19   by plaintiffs on March 26, 2025.  (Doc. No. 69.)  The court took this matter under submission

20   pursuant to Local Rule 230(g).  (Doc. No. 75.)  For the reasons explained below, the court will

21   grant plaintiffs' motion, in part.

22                              **BACKGROUND**

23        On May 22, 2023, plaintiffs Anthony Ussery and Alpha Zeta Logistix initiated this action

24   against defendant Mercedes-Benz USA LLC.  (Doc. No. 1.)  On June 13, 2023, defendant filed its

25   motion to dismiss plaintiffs' complaint.  (Doc. No. 9.)  On August 29, 2023, plaintiffs filed their

26   first amended complaint ("FAC").  (Doc. No. 24.)  On September 26, 2023, defendant filed its

27   motion to dismiss plaintiffs' FAC, which the court granted on May 2, 2024.  (Doc. Nos. 27, 35.)

28   On May 23, 2024, plaintiffs filed their second amended complaint ("SAC").  (Doc. No. 38.)  On

June 20, 2024, defendant filed its motion to dismiss plaintiffs' SAC, which the court granted in part and denied in part on November 25, 2024. (Doc. Nos. 41, 47.) On December 10, 2024, plaintiffs filed their operative third amended complaint ("TAC"). (Doc. No. 48.)

In their TAC, plaintiffs alleged that a new 2022 Mercedes-Benz G63 AMG that plaintiff Alpha Zeta Logistix purchased and leased for use by its Chief Executive, plaintiff Anthony Ussery, was delivered to plaintiffs with serious defects and nonconformities to warranty including engine electronics system and electrical defects. (Doc. No. 48 at ¶¶ 22–23, 32.) Plaintiffs asserted claims for breaches of express and implied warranties in violation of the Song-Berly Act, California Civil Code § 1790 *et seq.*, and violation of the Song-Berly Act, California Civil Code § 1793.2(b). (*Id.* at ¶¶ 48–91.)

On February 25, 2025, 21 days before trial was set to begin, the parties attended a settlement conference before U.S. Magistrate Judge Sean C. Riordan and settled the case, with the terms and conditions of the settlement being stated on the record by the court and agreed to by the parties. (Doc. No. 65.) As part of that settlement, defendant agreed to pay plaintiffs $255,000 exclusive of fees and costs. (Doc. No. 69 at 18.)

Apparently unable to agree on the appropriate amount of attorneys' fees, costs, and expenses to be paid to plaintiffs' counsel, on March 26, 2025, plaintiffs filed the pending motion for attorneys' fees, costs, and expenses. (Doc. No. 69.) On April 9, 2025, defendant filed its opposition to the pending motion, and on April 10, 2025, defendant filed a declaration in support of its opposition. (Doc. Nos. 72, 73.) On April 15, 2025, plaintiffs filed their reply thereto. (Doc. No. 74.)

## LEGAL STANDARD

Under California's Song-Berly Act, "if [a] buyer prevails in an action . . . , the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). "The plain wording of the statute requires the trial court to base the fee award upon actual time expended on the case,

as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the amount charged." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 817 (2006).  The Song Beverly Act:

> It requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable.  These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved.  If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount.  A prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount.

*Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (citation and internal quotation marks omitted); *see also Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 470 (2016).  Under a contingent fee arrangement, "a prevailing buyer represented by counsel is entitled to an award of reasonable attorney fees for time reasonably expended by his or her attorney." *Nightingale,* 31 Cal. App. 4th at 105 n.6.

"The determination of what constitutes a reasonable fee generally begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (quoting *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000)).  The court will apply the lodestar method to the Song-Beverly Act because "the statutory language of section 1794, subdivision (d), is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." *Robertson*, 144 Cal. App. 4th at 818; *see also Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 35 (2018).  Moreover, because "[the California] Supreme Court has held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to be applied in the absence of clear legislative intent to the contrary, [the lodestar adjustment method] . . . is applicable to attorney fee awards under section 1794, subdivision (d)." *Robertson*, 144 Cal. App. 4th at 818–19 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135–36 (2001)).  As the California Supreme Court has explained:

3

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

*Ketchum*, 24 Cal. 4th at 1132 (internal citation omitted). In addition, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." *Id.* "Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness." *Hellenberg v. Ford Motor Co.*, No. 18-cv-2202-JM-KSC, 2020 WL 1820126, at *1 (S.D. Cal. Apr. 10, 2020).

In opposing a request for attorneys' fees, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 848 (2018) (quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Assoc.*, 163 Cal. App. 4th 550, 564 (2008)). Instead, the opposing party must demonstrate that the hours claimed are duplicative or excessive. *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 562, 564; *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable."). "To challenge attorneys' fees as excessive, the challenging party must 'point to the specific items challenged, with a sufficient argument and citations to the evidence.'" *Nai Hung Li v. FCA US LLC*, No. 2:17-cv-06290-R-JEM, 2019 WL 6317769, at *1 (C.D. Cal. July 1, 2019) (quoting *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 564).

## ANALYSIS

As the buyers who prevailed in this lawsuit, plaintiffs are entitled to an award of reasonably incurred attorneys' fees, costs, and expenses. *See* Cal. Civ. Code § 1794(d). Here, plaintiffs seek: (1) an award of attorneys' fees in the amount of $107,597.50; (2) a lodestar multiplier of 1.0, in the amount of $107,597.50; and (3) an award of actual costs and expenses

4

1    incurred in the amount of $10,989.64.  (Doc. No. 69 at 2.)  Thus, plaintiffs seek a total award of

2    attorneys' fees and costs in the amount of $226,184.64.  (*Id.*)  Defendant contends that the

3    lodestar requested by plaintiffs is unreasonable for a number of reasons and that a positive

4    multiplier is not warranted in this case.  (Doc. No. 72 at 2, 6–11.)  Defendant also objects to

5    plaintiffs' request for costs and expenses, arguing that plaintiffs must file a bill of costs to obtain

6    them.  (*Id.* at 11.)

7    **A.    Attorneys' Fees Request**

8         To assess the reasonableness of plaintiffs' requested amount for attorneys' fees, the court

9    will first consider the reasonableness of the number of hours expended by plaintiffs' counsel, then

10   address the reasonableness of plaintiffs' counsel's hourly rates, and finally consider whether a

11   lodestar multiplier is warranted here.

12        1.    <u>Reasonableness of Number of Hours Expended</u>

13        Plaintiffs' counsel's billing records indicate that six attorneys expended (or anticipate

14   expending for purposes of the pending motion for attorneys' fees) a total of 226.9 billable hours

15   on this action, billing a total of $107,597.50 for its efforts in prosecuting this case.  (Doc. No. 69-

16   2 at 20.)  Defendant contends that the number of hours billed by plaintiffs' attorneys is

17   unreasonable for several reasons.  The court will address each of defendant's arguments in turn.

18        a.  *Block Billing*

19        First, defendant identifies[1] many time entries as block billed, arguing that these hours

20   should be reduced by 30%.  (Doc. Nos. 72 at 7; 69-2.)  In their reply, plaintiffs argue that their

---

[1] In an attachment to its opposition, defendant identifies all time entries to which it objects. (Doc. No. 73-26.)  Plaintiffs argue that the court should disregard this attachment as improper. (Doc. No. 74 at 4.)  The court is unpersuaded by plaintiffs' argument in this regard, particularly because plaintiffs attached extensive attorney billing records to their motion, and defendant is required to meet such evidence by "identify[ing] the particular charges it considers objectionable."  *Gorman*, 178 Cal. App. 4th at 101.  Indeed, the attachment to defendant's opposition does just that, identifying the time entries defendant considers objectionable along with a short statement of the basis for the objection.  *Cf. Nadarajah*, 569 F.3d at 920 ("In a chart, attached as Exhibit A to the government's opposition, the government objects to specific hours billed by the others for the district court proceedings, but does not state the reasons for the objections. . . .  Nevertheless, the rationales for some of the objections are apparent, and some of the objections have merit.").

5

1    time entries are not block billed, instead providing detailed descriptions of the tasks and sub-tasks

2    performed.  (Doc. No. 74 at 9–10.)  Plaintiffs further argue that any reduction on this basis should

3    be limited to no more than 10%.  (*Id.*)

4         Reducing block billed hours by a certain percentage is warranted because "block billing

5    makes it more difficult to determine how much time was spent on particular activities."  *Welch v.*

6    *Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).  "Block billing is the time-keeping

7    method by which each lawyer and legal assistant enters the total daily time spent working on a

8    case, rather than itemizing the time expended on specific tasks."  *Mendez v. Cnty. of San*

9    *Bernardino*, 540 F.3d 1109, 1128 (9th Cir. 2008), *overruled on other grounds by Arizona v.*

10   *ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).  One district court has held that, based on this

11   definition, time entries that contain multiple tasks separated by semi-colons do not qualify as

12   block billed where they are sufficiently detailed.  *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F.

13   Supp. 2d 1093, 1103 (N.D. Cal. 2010).  However, this court is persuaded that block billing

14   includes "the practice of listing several unrelated tasks under one time period, without specifying

15   the time spent on each task."  *Balboa Cap. Corp. v. JAAM Transp. LLC*, No. 8:22-cv-01857-JVS-

16   DFM, 2024 WL 3466476, at *5 (C.D. Cal. June 3, 2024); *see also Welch*, 480 F.3d at 948

17   (referring to block billing as "lump[ing] together multiple tasks, making it impossible to evaluate

18   their reasonableness") (citation omitted); *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d

19   677, 690 (9th Cir. 2012) (referring to block billing as "list[ing] numerous tasks performed over

20   multi-hour spans" but holding that it was not abuse of discretion to award the associated fees

21   because counsel was not required to record in great detail how each minute of his time was

22   expended), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839

23   F.3d 1179 (9th Cir. 2016); *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 765–66 (9th Cir. 2015)

24   (referring to block billing as a "format").  According to this understanding of block billing, many

25   of plaintiffs' time entries submitted in support of their pending motion are block billed.  (Doc.

26   No. 73-26.)

27        The court will reduce such time entries by 10%.  *Moreno v. City of Sacramento*, 534 F.3d

28   1106, 1112 (9th Cir. 2008) (holding that for a reduction of more than 10%—a "haircut"—the

1    court must give a "specific explanation"); *Welch*, 480 F.3d at 948 ("Nonetheless, the district court

2    clearly erred in applying a 20 percent reduction to *all* of Welch's requested hours. . . .  Reducing

3    the total hours by 20 percent [] effectively served as a 40 percent penalty on those hours actually

4    block billed[.]").  If the court finds that certain tasks listed in these block billed time entries are

5    not recoverable, the court may reduce such entries further.  *Cf. Ryan*, 786 F.3d at 765 ("But, the

6    district court provided no explanation for the determination that twenty percent was the

7    appropriate amount to deduct" for block billing.).

8         b.  *Exaggerations*

9         Defendant identifies many time entries as exaggerated, sometimes specifying that

10   plaintiffs' counsel was working off of templates or made limited changes to previously filed

11   documents.  (Doc. No. 73-26.)

12        "[T]he district court may exclude from the fee request any hours that are 'excessive,

13   redundant, or otherwise unnecessary.'"  *Welch*, 480 F.3d at 946.  Further, "the use of templates

14   may be a basis for a reduction in attorneys' fees awards."  *Balboa Cap. Corp.*, 2024 WL 3466476,

15   at *5.

16        However, the court finds that the time entries identified by defendant in this objection are

17   reasonable and not excessive.  (Doc. No. 73-26.)  For instance, plaintiffs billed 1.8 hours to

18   review and revise the initial draft complaint and to finalize the same for filing.  Even assuming

19   that plaintiffs' counsel used a template to draft the complaint, 1.8 hours to adapt the template for

20   use in the instant case is reasonable.  *Walters v. FCA US, LLC*, No. 2:20-cv-00644-AB-JC, 2021

21   WL 926103, at *2 (C.D. Cal. Jan. 6, 2021) ("Defendant alleges that Plaintiff used a template for

22   the complaint[.]  . . .  [E]ven accepting Defendant's assertion as true, Plaintiff's requested 1.5

23   hours to modify a complaint, including the factual basis, review it thoroughly, and prepare it for

24   filing is reasonable."); *see also Nadarajah v. Holder*, 569 F.3d 906, 922 (9th Cir. 2009) ("By and

25   large, the court should defer to the winning lawyer's professional judgment as to how much time

26   he was required to spend on the case; after all, he won, and might not have, had he been more of a

27   slacker.") (quoting *Moreno*, 534 F.3d at 1112).  Similarly, plaintiffs' counsel billed 10.1 hours for

28   reading and analyzing defendant's motion to dismiss plaintiffs' second amended complaint and

7

1  request for judicial notice, reading plaintiffs' second amended complaint, and preparing plaintiffs'

2  opposition to defendant's motion to dismiss and request for judicial notice.  (Doc. No. 73-26 at

3  37.)  Although this time entry will be reduced as block billed, it need not be reduced further, as it

4  is reasonable in the court's view that these tasks, collectively, would take plaintiffs' counsel 10.1

5  hours to complete.  *See Nadarajah*, 569 F.3d at 922.

6                          c.  *Internal Communications*

7          Next, defendant identifies several time entries as reflecting internal communications

8  among plaintiffs' counsel and argues in its opposition that internal communications are not

9  recoverable.  (Doc. Nos. 72 at 8; 73-26.)

10         As the undersigned has previously held, internal communications are, in fact, recoverable.

11  *Aviles v. Subaru of Am., Inc.*, No. 1:18-cv-01544-DAD-SKO, 2020 WL 868842, at *4 (E.D. Cal.

12  Feb. 21, 2020) ("Meetings between attorneys are a routine and necessary part of providing legal

13  representation to the client.").  "Generally, two attorneys cannot bill for attending the same

14  meeting or communicating with each other."  *Bd. of Trs. of IBEW Loc. Union No. 100 Pension*

15  *Tr. Fund v. Porges*, No. 1:11-cv-02048-LJO, 2013 WL 6596943, at *6 (E.D. Cal. Dec. 16, 2013).

16  However, this pertains to the duplicative nature of such time entries rather than the fact that they

17  are internal communications.

18                          d.  *Duplicative Entries*

19         Defendant identifies several of plaintiffs' time entries as duplicative.  (Doc. No. 73-26.)

20         "Courts have discretion to eliminate hours attributable to 'duplication of effort[.]'"

21  *Mendez*, 540 F.3d at 1129.  "Even duplicative work, however, is not a justification for cutting a

22  fee, unless 'the lawyer does unnecessarily duplicative work.'"  *Id.*  "Courts must exercise

23  judgment and discretion, considering the circumstances of the individual case, to decide whether

24  there was unnecessary duplication."  *Democratic Party of Washington State v. Reed*, 388 F.3d

25  1281, 1286–87 (9th Cir. 2004).

26              For example, if lawyers merely watch [a hearing] so that they can
               learn and use their knowledge in subsequent cases, their time should
27              not be billed.  But if, for example, they are there because their
               assistance is or may be needed by the lawyer arguing the case, as
28              when a judge asks "where is that in the record," and one lawyer must
               frantically flip through pages and find the reference to hand to the

> lawyer arguing, then the assistance is most definitely necessary. Also, for example, a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later.

*Id.* at 1287.  Having examined the time entries, the court finds that, given the circumstances, they are not unnecessarily duplicative.

   e. *Clerical Work*

  Defendant identifies many time entries of plaintiffs' counsel as reflecting clerical work rather than attorney work.  (Doc. No. 73-26.)

  "[T]asks for clerical or ministerial work are generally 'not recoverable as part of a reasonable attorney's fee award.'"  *Moofly Prods., LLC v. Favila*, No. 13-cv-05866-SJO-PJW, 2015 WL 6681164, at *3 (C.D. Cal. Nov. 2, 2015), *aff'd,* 682 F. App'x 584 (9th Cir. 2017).  "Such tasks should be subsumed in a law firm's overhead."  *Id.*  "Tasks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable."  *Nolan v. City of Los Angeles*, No. 03-cv-02190-GAF-AJW, 2014 WL 12564127, at *6 (C.D. Cal. Feb. 10, 2014).  Tasks such as "finalizing motions, assigning quick paralegal tasks, drafting memos, or emailing" are not clerical and are compensable.  *Johnson v. Ends In E. Inc.*, No. 5:20-cv-06946-EJD, 2021 WL 5565842, at *4 (N.D. Cal. Nov. 29, 2021).

  In certain limited cases, block billed entries contain non-compensable clerical tasks, such as calendaring events.  (Doc. No. 73-26 at 13, 40, 44) (in total, 0.4 hours charged by Bill Oppenheim).  The remaining time entries that defendant flagged as clerical are in fact compensable.  (Doc. No. 73-26.)  Therefore, the court will reduce by 20%, rather than 10%, those block billed time entries containing clerical tasks.

   f. *Case Review*

  Next, defendant identifies certain time entries by plaintiffs' counsel as reflecting case review.  (Doc. No. 73-26.)

  Courts have reduced hours attributed to case review as unnecessary when case review is conducted repeatedly and the plaintiff fails to specify "what counsel's purpose was for reviewing

1    the file and what counsel's client gained by the review." *Lowe v. Unum Life Ins. Co. of Am.*, No.

2    05-cv-00368-WBS-GGH, 2007 WL 4374020, at *4 (E.D. Cal. Dec. 14, 2007); *see also Uriarte-*

3    *Limon v. Smith*, No. 16-cv-00713-FMO-PLA, 2018 WL 6265098, at *4 (C.D. Cal. Jan. 3, 2018)

4    ("[T]he court agrees with defendant's contention that repeatedly reviewing the case file was

5    unnecessary").  As the undersigned has found previously, under certain circumstances, review of

6    the case file is necessary and therefore compensable.  *See Figures v. FCA US LLC*, No. 1:17-cv-

7    00618-DAD-JLT, 2020 WL 820164, at *4 (E.D. Cal. Feb. 19, 2020) ("[T]he fact that HDMN

8    attorneys had to become familiar with the facts of this case, review files, and get up to speed in

9    preparation for the trial of this action does not constitute a duplication of effort.  HDMN was

10   brought in to try the case and necessarily had to review files and pre-existing work-product to do

11   so.").  Here, plaintiffs' counsel's review of the case file involved review of specified documents

12   in preparation for obviously related appropriate attorney tasks.  (Doc. No. 73-26.)  Such review

13   was therefore necessary and compensable.

14                    g.   *Defense Counsel Billed Less*

15          Defendant identifies certain time entries as excessive in light of the fact that defendant's

16   counsel billed less for comparable tasks.  (*Id.*)  However, the time entries at issue were block

17   billed, including not only the comparator task but additional tasks as well.  (*Id.*)  Therefore, the

18   time defendant's counsel spent on one of the listed tasks, such as attending a hearing, does not

19   provide the court with a useful point of comparison for the entire block billed entry.

20                    h.   *Pre-Litigation Work*

21          Finally, defendant identifies one time entry as concerning "prelitigation work."  (Doc. No.

22   73-26 at 2.)  However, "[r]easonable pre-litigation fees are compensable under both Ninth Circuit

23   and California law."  *Signatures Network, Inc. v. Estefan*, No. 03-cv-04796-SBA-BZ, 2005 WL

24   151928, at *2 (N.D. Cal. Jan. 24, 2005).

25                    i.   *Hours*

26          The court has reviewed plaintiffs' counsel's billing records at issue here and concludes

27   that, for the most part, the time billed was reasonably incurred.  Thus, the court will include in the

28   lodestar calculation of an attorneys' fee award the following hours:

10

| Attorney | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Michael Rosenstein | 5.7 | 5.6 |
| Attorney Sepehr Daghighian | 79.3 | 77.2 |
| Attorney Alastair Hamblin | 17.4 | 17.4 |
| Attorney Brian Murray | 2.4 | 2.4 |
| Attorney Miguel Ortiz | 2.4 | 2.2 |
| Attorney Bill Oppenheim | 119.7 | 114.4 |
| Total Hours | 226.9 | 219.2 |

2.      Reasonableness of the Hourly Rates to be Applied

Next, the court must determine whether the hourly rates requested by plaintiffs' attorneys are reasonable. Under California law, when awarding attorneys' fees under Civil Code § 1794(d), the relevant inquiry is whether "the monetary charge being made for the time expended [is] reasonable" under all the circumstances including "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Goglin*, 4 Cal. App. 5th at 470 (quoting *Nightingale*, 31 Cal. App. 4th at 104). California courts therefore focus on the reasonable hourly rate for the work performed by the counsel who did that work, regardless of the forum in which that work was performed and without regard to typical hourly rates in the forum in which the matter was litigated. *See Goglin*, 4 Cal. App. 5th at 470 (affirming a fee award applying a hourly rate of $575 per hour in a Song-Beverly Act case on the grounds that the trial court had considered the evidence that the client agreed to compensate counsel at the rate of $575 an hour (later increased to $625), other state and federal courts had awarded the attorney comparable rates in similar cases, and the trial court had observed the attorney's skills first hand, while not even mentioning the prevailing rates in the trial court's area); *see also Filiberto Negrete v. Ford Motor Co. et al.*, No. 18-cv-01972-DOC-KK, 2019 WL 4221397, at *3 (C.D. Cal. June 5, 2019) ("Plaintiff has demonstrated that counsel has been awarded attorneys' fees at similar rates under the Song-Beverly Act. Such evidence is generally sufficient to show that an attorney's hourly rates are reasonable.") (internal citation omitted). The fee applicant bears the burden of producing satisfactory evidence that the fees incurred were "reasonable in amount." *Goglin*, 4

/////

11

1  Cal. App. 5th at 470 (quoting *Nightingale*, 31 Cal. App. 4th at 104); *see also Blum v. Stenson*,

2  465 U.S. 886, 895 n.11 (1984).

3       Plaintiffs request an attorneys' fee award based on the following hourly rates for its

4  attorneys who worked on this matter:

| Attorney | Requested Hourly Rate | Years of Practice |
|---|---|---|
| Attorney Michael Rosenstein | $700 | 30+ |
| Attorney Sepehr Daghighian | $625 | 19+ |
| Attorney Alastair Hamblin | $550 | 18 |
| Attorney Brian Murray | $550 | 13 |
| Attorney Miguel Ortiz | $525 | 19 |
| Attorney Bill Oppenheim | $350 | 5 |

10  (Doc. No. 69-1 at 2–6.)

11       In support of these requested rates, plaintiffs have submitted the declaration of attorney

12  Sepehr Daghighian. (Doc. No. 69-1.) In his declaration, attorney Daghighian describes the

13  experience level and background of each of the attorneys that worked on this matter, and he

14  asserts that their hourly rates are reasonable and consistent with the rates that courts have

15  approved for these specific attorneys. (*Id.* at 2–10.) Attached to attorney Daghighian's

16  declaration are several hourly rate determinations by state courts in Song-Beverly Act actions

17  with respect to some of the attorneys who worked on this case. (Doc. Nos. 69-5–69-16.)

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

12

1    In its opposition, defendant argues that the court should use the prevailing market rates in

2    the forum to set plaintiffs' attorneys' rates.[2]  (Doc. No. 72 at 6.)

3    Because "the reasonable value of attorney services is variously defined as the hourly

4    amount to which attorneys of like skill in the area would typically be entitled," *Ketchum*, 24 Cal.

5    4th at 1133, the court finds that evidence of what some of the attorneys have previously been

6    awarded when litigating other Song-Beverly actions does assist this court in determining the

7    reasonable hourly rates to be awarded in this case.  *See also Goglin*, 4 Cal. App. 5th at 470;

8    *Filiberto Negrete*, 2019 WL 4221397, at *3.  In certain of plaintiffs' attached orders, it is not

9    clear what rates counsel requested, or it is apparent that counsel requested lower rates than they

10    are requesting in the instant action.  (Doc. Nos. 69-7–69-16.)  In at least two of the attached

11    orders, however, attorneys Sepehr Daghighian, Michael Rosenstein, Alastair Hamblin, and Brian

12    Murray were awarded the same hourly rates that they are requesting here.  (Doc. Nos. 69-5, 69-6.)

13    /////

14

_____

15    [2]  In awarding attorneys' fees under the Song-Beverly Act, other district courts have required
16    "[t]he fee applicant . . . [to] produc[e] satisfactory evidence that the requested rates are in line
      with those prevailing in the community for similar services of lawyers of reasonably comparable
      skill and reputation."  *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2019 WL 4674368, at *4
17    (N.D. Cal. Sept. 25, 2019) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir.
18    1987)); *see also Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL 1994459, at *4–5 (E.D.
      Cal. May 6, 2019); *Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5–6
19    (E.D. Cal. May 21, 2018).  Citing to Ninth Circuit and Supreme Court precedent, these courts
      have stated that the "relevant community" in determining a prevailing market rate is the forum in
20    which the district court sits and have then analyzed whether the rates requested by counsel are
      reasonable in light of rates paid to attorneys of similar skill and experience in the forum district.
21    *See, e.g.*, *Self*, 2019 WL 1994459, at *4–6.  This, however, is the framework that federal courts
      apply to motions seeking attorneys' fees pursuant to a federal statute.  The undersigned is aware
22    of no authority holding that a federal court must apply that same framework when awarding
23    attorneys' fees pursuant to a state statute.  Indeed, the California Court of Appeal in *Goglin* did
      not engage in that forum-based rate analysis and, as evidenced by the many state court fee orders
24    that the parties have pointed this court to, state courts generally do not engage in that analysis.
      The undersigned, therefore, considers the pending motion under the standard articulated by the
25    California Court of Appeal in *Goglin* and will determine "whether the monetary charge being
      made for the time expended [is] reasonable" in light of "the complexity of the case and
26    procedural demands, the skill exhibited and the results achieved."  4 Cal. App. 5th at 470 (internal
27    quotation marks and citation omitted).  This approach will appropriately result in plaintiffs'
      counsel being compensated at the same hourly rates they would have received in state court rather
28    than a lower rate based solely on the removal of the action to federal court.

1    Additionally, the court observes that plaintiffs' attorneys achieved an impressive settlement in

2    this case, including $70,000 in civil penalties.  (Doc. No. 69 at 27.)

3            Attorney Daghighian's declaration details the following regarding attorney Miguel Ortiz:

4                Miguel A. Ortiz is an associate attorney with my firm and has been
                 admitted to practice in California since 2006.  Mr. Ortiz has extensive
5                civil litigation he has already served as a "second chair" in two jury
                 trials and prepared several dozen matters for trial.  A graduate of
6                Loyola Law School, Los Angeles, Mr. Ortiz focused on public
                 interest law.  Mr. Ortiz worked at Bet Tzedek, a local legal services
7                non-profit.   While at Loyola, Mr. Ortiz earned a certificate in
                 Alternative Dispute Resolution and the Wiley M. Manuel Award for
8                Pro Bono Legal Services.  His hourly rate in this matter is $525.00
                 per hour.  Mr. Ortiz leads the discovery team at CCA and is well-
9                versed in all aspects of discovery practice in California State and
                 Federal Courts.
10

11   (Doc. No. 69-1 at 5–6.)

12           Attorney Daghighian details the following regarding attorney Bill Oppenheim:

13               Michael William Oppenheim is an associate attorney at my office
                 and was admitted to the California Bar in 2020.  Mr. Oppenheim was
14               the associate attorney primarily in charge of this matter for CCA.
                 Had the case proceeded to trial on March 18, 2025, Mr. Oppenheim
15               would have served as "second chair" trial counsel.  Mr. Oppenheim
                 is well-versed in consumer warranty litigation, has handled dozens
16               of lemon law cases, and has prepared numerous cases for trial.  Mr.
                 Oppenheim graduated from Hamilton College with a bachelor's
17               degree in history.  While attending Rutgers Law School – Newark,
                 Mr. Oppenheim was selected as the C. Willard Heckel Scholar.  Also,
18               during law school, Mr. Oppenheim served as the judicial extern for
                 the Hon. Jodi Lee Alper in the Essex County Family Division and
19               the Hon. Deborah Gross-Quatrone in the Civil Division.   Mr.
                 Oppenheim won the Turnaround Management Association New
20               Jersey Chapter's Gambardella Bankruptcy Competition and was a
                 student-attorney at the Rutgers Civil Justice Clinic.  Based on his
21               years of experience, CCA established Mr. Oppenheim's hourly rate
                 at $350.00 per hour.
22

23   (*Id.* at 4–5.)

24           Having considered the various state court orders submitted by plaintiffs as well as the

25   other evidence before it, the court concludes that the hourly rates requested by plaintiffs' counsel

26   are reasonable:

27   /////

28   /////

14

| Attorney | Requested Hourly Rate | Years of Practice |
|---|---|---|
| Attorney Michael Rosenstein | $700 | 30+ |
| Attorney Sepehr Daghighian | $625 | 19+ |
| Attorney Alastair Hamblin | $550 | 18 |
| Attorney Brian Murray | $550 | 13 |
| Attorney Miguel Ortiz | $525 | 19 |
| Attorney Bill Oppenheim | $350 | 5 |

3.    Lodestar Calculation

Based on the hours and hourly rates that the court has determined are reasonable in this matter, the lodestar here totals $104,255.  The court's calculations in this regard are reflected below.

| Attorney | Hours Awarded | Hourly Rate Awarded | Lodestar |
|---|---|---|---|
| Attorney Michael Rosenstein | 5.6 | $700 | $3,920 |
| Attorney Sepehr Daghighian | 77.2 | $625 | $48,250 |
| Attorney Alastair Hamblin | 17.4 | $550 | $9,570 |
| Attorney Brian Murray | 2.4 | $550 | $1,320 |
| Attorney Miguel Ortiz | 2.2 | $525 | $1,155 |
| Attorney Bill Oppenheim | 114.4 | $350 | $40,040 |
| | | | Total:  $104,255 |

4.    Lodestar Multiplier

Next, plaintiffs urge this court to apply a multiplier of 1.0 to the lodestar in this case. (Doc. No. 69 at 9.)

The lodestar may be "augmented . . . by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award." *Robertson*, 144 Cal. App. 4th at 819; *see also Warren*, 30 Cal. App. 5th at 35.

In their motion, plaintiffs argue that the contingent nature of this litigation warrants a 0.2 multiplier and that the delay in payment warrants an additional multiplier (presumably 0.8), amounting to a proposed final multiplier of 1.0.  (Doc. No. 69 at 32–33.)  Plaintiffs argue

15

1    elsewhere in their motion that defendant's novel arguments in its motions to dismiss rendered this

2    case difficult, plaintiffs' counsel were well-equipped to handle defendant's aggressive litigation

3    tactics, and the nature of the litigation precluded other employment for plaintiffs' counsel.  (*Id.* at

4    24–25.)  In its opposition, defendant argues that an upward multiplier is not warranted here and

5    suggests that a negative multiplier may be warranted instead because contingency alone does not

6    merit a multiplier, particularly in light of the availability of statutory fees, plaintiffs' counsel was

7    not prevented from taking on additional clients, and this case was simple and the work was copy-

8    paste, making it neither complex, nor difficult.  (Doc. No. 72 at 10–11.)

9          The court finds that this action was somewhat more novel and difficult than the typical

10   lemon law action due to certain arguments advanced by defendant in its motions to dismiss.

11   However, as defendant compellingly demonstrated by attaching plaintiffs' filing alongside

12   templates, much of the work plaintiffs' counsel completed was based on templates.  (Doc. No. 73

13   at 2–3.)  Further, the court notes that the arguments made in defendant's successive motions to

14   dismiss largely mirrored the arguments made in its first motion to dismiss.  (Doc. Nos. 9, 27, 41.)

15   The limited challenge presented by defendant's first motion to dismiss cannot overcome the

16   otherwise routine nature of this action.  As for the second factor, given the hours that plaintiffs'

17   counsel billed over the course of two years of litigation, the court does not find plaintiffs'

18   assertion that its attorneys were prevented from taking on additional clients to be credible.

19         Moreover, the court concludes that the contingent nature of this action also does not

20   warrant the application of an upward multiplier.  "The purpose of a fee enhancement, or so-called

21   multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important

22   . . . rights . . . into line with incentives they have to undertake claims for which they are paid on a

23   fee-for-services basis."  *Ketchum*, 24 Cal. 4th at 1132.

24              A contingent fee must be higher than a fee for the same legal services
              paid as they are performed.  The contingent fee compensates the
25            lawyer not only for the legal services he renders but for the loan of
              those services.  The implicit interest rate on such a loan is higher
26            because the risk of default (the loss of the case, which cancels the
              debt of the client to the lawyer) is much higher than that of
27            conventional loans.

28   /////

16

1    *Id.* (citation and internal quotation marks omitted).  As the undersigned has concluded in similar

2    circumstances, "an upward multiplier based on the contingent risk is not warranted here because

3    that factor is outweighed by the other factors the court has considered, namely that this case was

4    not novel, complex, or difficult[.]"  *Heffington v. FCA US LLC*, No. 2:17-cv-00317-DAD-JLT,

5    2020 WL 5017610, at *9 (E.D. Cal. Aug. 25, 2020).

6          Similarly, the court finds that an upward multiplier due to any delay in payment of fees to

7    plaintiffs' counsel is not warranted here.  Plaintiffs contend that defendant dragged this case out

8    for two years by refusing to settle once plaintiffs filed this action.  (Doc. No. 69 at 33.)  Be that as

9    it may, the court is "not convinced that any delay was so egregious so as to justify an upward

10   multiplier."  *Heffington*, 2020 WL 5017610, at *9 (denying upward multiplier even assuming the

11   defendant was solely responsible for the three-year delay in payment of fees).  The court is also

12   unpersuaded that a negative multiplier, sought by defendant, is warranted.  *Id.* (denying

13   downward multiplier on similar facts).

14         Accordingly, the court declines to apply an upward or downward multiplier to the lodestar

15   amount under the circumstances of this case, and will thus award $104,255 in attorneys' fees.

16   **B.    Motion for Costs and Expenses**

17         Pursuant to California Civil Code § 1794(d), plaintiffs seek an award of $10,989.64 as

18   reimbursement for costs and expenses incurred by plaintiffs' counsel in litigating this matter.

19   (Doc. No. 69 at 2.)  Plaintiffs did not file a Bill of Costs but instead included their request for

20   costs and expenses in their pending motion and attached as an exhibit an itemized list of such

21   costs and expenses.  (Doc. No. 69-2 at 18–19.)  In its opposition, defendant argues that it is

22   improper for plaintiffs to seek costs and expenses through a motion rather than a Bill of Costs.

23   (Doc. No. 72 at 11.)

24         California law permits plaintiffs who prevail in Song-Beverly Act cases to recover costs

25   and expenses, including expert witness fees.  *See* Cal. Civ. Code § 1794(d); *Jensen v. BMW of N.*

26   *Am., Inc.*, 35 Cal. App. 4th 112, 138 (1995), *as modified on denial of reh'g* (June 22, 1995)

27   (noting that with regards to § 1794, "the addition of awards of 'costs and expenses' by the court

28   to the consumer to cover such out-of-pocket expenses as filing fees, expert witness fees,

marshal[]'s fees, etc., should open the litigation process to everyone").  Applying § 1794(d), the court determines that expert witness fees and other costs that are nontaxable under federal procedural rules are recoverable here.  *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–66 (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003) (applying Oregon statute approving expert witness fees because the law was "an 'express indication' of a state legislature's 'special interest in providing litigants' with full compensation for reasonable sums" in pursuit of a statutory claim).  However, § 1794(d) only answers the question of *whether* plaintiffs may recoup such costs and expenses—it does not answer the question of *how* plaintiffs must seek reimbursement.[3]

Because the recovery of "costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d) even in diversity cases," *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003), the appropriate vehicle for plaintiffs to recoup expert witness fees and other expenses is by motion brought pursuant to Rule 54(d)(2)(A), not by taxation through a Bill of Costs.  The language of § 1794(d) is consistent with this approach:

> If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, *determined by the court to have been reasonably incurred* by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code § 1794(d) (emphasis added).  Whereas taxable costs are awarded as a matter of course, and a court must justify its refusal to award such costs, *Champion Produce*, 342 F.3d at 1022 (holding that a "district court must 'specify reasons' for its refusal to award costs" because "Federal Rule of Civil Procedure 54(d)(1) establishes that costs are to be awarded as a matter of course in the ordinary course") (citation omitted), the party claiming nontaxable costs like expert witness fees must demonstrate to the court, *by motion*, that its request is reasonable.  *See* Fed. R.

---

[3]  The court recognizes that district courts in this circuit are divided as to whether expert witness fees and other costs and expenses are recoverable in federal court pursuant to § 1794(d), and if so, whether such costs and expenses are taxable in a Bill of Costs or must be sought by way of motion.  *Compare Base*, 2020 WL 363006, at *6–7 (listing and comparing cases), *and Zomorodian v. BMW of N. Am., LLC*, 332 F.R.D. 303, 307 (C.D. Cal. 2019), *with Self*, 2019 WL 1994459, at *15, *and Hall*, 2018 WL 2298431, at *10.

18

1  Civ. P. 54(d)(2)(A); Cal. Civ. Code § 1794(d).  This logic is precisely why plaintiffs were

2  required to and are seeking attorneys' fees, costs, and expenses by motion and not by way of a

3  Bill of Costs.

4         Because defendant does not contest the amount or kinds of fees plaintiffs seek and based

5  upon the court's review of plaintiffs' listed costs and expenses, the court will award costs and

6  expenses as follows:

| Cost and Expense | Amount Requested | Amount Awarded |
|---|---|---|
| Court Filing Fees | $804.00 | $804.00 |
| Fees for Service | $410.59 | $410.59 |
| Court Reporter Fees | $6,750.05 | $6,750.05 |
| Expert Witness Fees[4] | $3,025.00 | $3,025.00 |
| Total: | $10,989.64 | **$10,989.64** |

12        The court concludes that plaintiffs are entitled to a total of $10,989.64 in reimbursements

13  for costs and expenses, in addition to an award of reasonably incurred attorneys' fees.

14                                    **CONCLUSION**

15        For the reasons explained above:

16     1.    Plaintiffs' motion for attorneys' fees and costs (Doc. No. 69) is GRANTED IN

17           PART;

18     2.    The court awards $104,255 in attorneys' fees based on the lodestar analysis set

19           forth above; and

20     3.    The court awards costs and expenses in the amount of $10,989.64.[5]

21        IT IS SO ORDERED.

22  Dated:   **October 6, 2025**                    _Dale A. Drozd_

23                                          DALE A. DROZD

24                                          UNITED STATES DISTRICT JUDGE

25  _____

26  [4] "[P]laintiffs who prevail under the Song-Beverly Act are entitled to compensation for fees paid
    to their retained expert witnesses."  *Seebach v. BMW of N. Am., LLC*, No. 2:18-cv-00109-KJM-

27  AC, 2021 WL 516712, at *1 (E.D. Cal. Feb. 11, 2021).

28  [5]  The total awarded of attorneys' fees and costs is therefore $115,244.64.